# EXHIBIT A

1  LIONEL Z. GLANCY (#134180)
   ROBERT V. PRONGAY (#270796)
2  CASEY E. SADLER (#274241)
   ELAINE CHANG (#293937)
3  **GLANCY PRONGAY & MURRAY LLP**
4  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
5  Telephone:    (310) 201-9150
   Facsimile:    (310) 201-9160
6  Email:        rprongay@glancylaw.com
                 echang@glancylaw.com
7

**FILED**
Superior Court of California
County of Los Angeles

AUG 1 1 2015

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
   Shaunya Bolden

8  *Attorneys for Plaintiffs Ning Shen and William Fitzpatrick*

9  [Additional Attorneys on the signature page]

10

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA
                 FOR THE COUNTY OF LOS ANGELES

12

13  NING SHEN AND WILLIAM                    Case No.:
    FITZPATRICK, Individually and On Behalf
14  of All Others Similarly Situated,        **CLASS ACTION** BC 5 9 0 9 9 9

15                         Plaintiffs,

16       v.                                  **COMPLAINT FOR VIOLATIONS OF**
                                             **THE FEDERAL SECURITIES LAWS**
17  TRUECAR, INC., SCOTT PAINTER,
    MICHAEL GUTHRIE, ABHISHEK               **DEMAND FOR JURY TRIAL**
18  AGRAWAL, TODD BRADLEY, ROBERT
    BUCE, CHRISTOPHER CLAUS, STEVEN
19  DIETZ, THOMAS GIBSON, JOHN
    KRAFCIK, JOHN PIERANTONI, ION
20  YADIGAROGLU, GOLDMAN, SACHS &
    CO, J.P. MORGAN SECURITIES LLC, RBC
21  CAPITAL MARKETS, LLC, COWEN AND
    COMPANY, LLC, JMP SECURITIES LLC,
22  and MORGAN STANLEY & CO.,
23

24                         Defendants.

25

26

27

28

313611.1                      COMPLAINT

CIT/CASE:        BC590999
LEA/DEF#:
RECEIPT #:       CCH465980095
DATE PAID:       08/11/15  04:07 PM
PAYMENT:         $1,000.00
RECEIVED:
   CHECK:        $1,000.00
   CASH:         $0.00
   CHANGE:       $0.00
   CARD:         $0.00
                 310

CIT/CASE:        BC590999
LEA/DEF#:
RECEIPT #:       CCH465980094
DATE PAID:       08/11/15  04:07 PM
PAYMENT:         $435.00
RECEIVED:
   CHECK:        $435.00
   CASH:         $0.00
   CHANGE:       $0.00
   CARD:         $0.00
                 310

**Exhibit A**
**Page 6**

Plaintiffs Ning Shen and William Fitzpatrick ("Plaintiffs"), by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by TrueCar, Inc. ("TrueCar" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by TrueCar; and (c) review of other publicly available information concerning TrueCar.

**NATURE AND SUMMARY OF THE ACTION**

1.     This is a securities class action on behalf of all those who purchased TrueCar common stock issued pursuant and/or traceable to the Company's false and/or misleading Registration Statement and Prospectus (collectively, the "IPO Registration Statement") issued in connection with the Company's May 16, 2014 initial public offering (the "IPO" or the "Offering"), and the Registration Statement and Prospectus (collectively, the "Secondary Registration Statement") issued in connection with the follow-on public offering on or about November 17, 2014 (the "SPO" or the "Secondary Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2.     The IPO Registration Statement and the Secondary Registration Statement are collectively referred to as the Registration Statements.

3.     Defendant TrueCar operates a data driven platform that allows users to obtain market based pricing data on new and used cars and to connect with TrueCar's network of Certified Dealers. TrueCar's platform operates on a common technology infrastructure, powered by proprietary data and analytics. Users access TrueCar's platform through the TrueCar.com website and TrueCar mobile applications or through the car buying websites and mobile

313611.1

COMPLAINT
- 1 -

1  applications that TrueCar operates for its affinity group marketing partners.

2      4.    In the IPO, the Company and the underwriters sold 8,941,250 shares of common

3  stock at a price of $9.00 per share, which included 1,166,250 shares sold pursuant to the exercise

4  by the underwriters of the over-allotment option.  According to the Company, the IPO raised

5  approximately $69.2 million in net proceeds to the Company after deducting underwriters'

6  discounts, commissions, and other IPO expenses.

7      5.    In the SPO, the Company, selling stockholders, and the underwriters sold

8  7,362,991 shares of common stock at a price of $17.00 per share, which included 1,960,390 shares

9  of common stock sold by the Company and 5,402,601 shares of common stock sold by selling

10  stockholders.  According to the Company, the SPO raised approximately $30.8 million in net

11  proceeds to the Company (approximately $125 million in gross proceeds for the Company and the

12  selling stockholders).

13      6.    Defendants in this action, as defined below, consist of TrueCar, TrueCar executives

14  and directors who signed the Registration Statements, and the underwriters to the Offerings

15  (collectively, the "Defendants").

16      7.    In violation of the Securities Act, Defendants negligently issued false and

17  misleading statements and omitted material facts from the Registration Statements and

18  incorporated Offering Materials that the Company filed with the SEC in support of the Offering.

19  Defendant is strictly liable for any and all material misstatements or omissions in the Offering

20  Materials.  Furthermore, because this case involves Registration Statements, Defendants also had

21  an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks,

22  and uncertainties, even if the Offering Materials had otherwise said nothing about such issues. *See*

23  Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii) (requiring that the materials incorporated

24  in a Registration Statement disclose all "known trends or uncertainties" reasonably expected to

313611.1

COMPLAINT
- 2 -

have a material unfavorable impact on the Company's operations).  Thus, Defendants had an affirmative duty to ensure that the Registration Statements and the materials incorporated therein disclosed all uncertainties that they knew or should have reasonably expected would have a materially adverse impact on TrueCar's business.  Defendants failed to fulfill this obligation.

8.     Defendants misleadingly concealed and failed to disclose that: (1) the Company's business practices violated unfair competition and deceptive trade practice laws because TrueCar acts as a dealer and broker in car sales transactions without proper licensing, in violation of the laws of a number of States; (2) the Company's growth was based on the Company making unsustainable levels of sales and marketing expenditures; and (3) that as a result of the foregoing, the Company's Registration Statements and incorporated Offering Materials were false, materially misleading, and/or incomplete at all relevant times.

9.     As a result of the materially misleading and inaccurate statements and/or omissions in the Registration Statements, the value of TrueCar common stock was artificially inflated.  As of the date of this filing, the stock has plummeted by approximately 33% since its IPO Offering price and nearly 65% since its Secondary Offering price.

10.    For all of the claims stated herein, Plaintiffs expressly exclude any allegation that could be construed as alleging fraud or intentional or reckless misconduct.  Plaintiffs' claims are based solely on claims of strict liability under the 1933 Act.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to §§ 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).  This Court has jurisdiction over the subject matter of this action pursuant to § 22 of the Securities Act, 15 U.S.C. § 77v, which explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought *in any State court* of competent jurisdiction shall be removed to any court in the United States."  Section 16(c)

313611.1

COMPLAINT
- 3 -

of the Securities Act refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims **under state or common law**. This is an action asserting federal law claims. Thus, it does not fall within the definition of a "covered class action" under §16(c) and therefore is not removable to federal court under the Securities Litigation Uniform Standards Act of 1998.

12.   Each Defendant has sufficient contacts with California, or otherwise purposefully avails itself of benefits from California or has property in California, so as to render the exercise of jurisdiction over each Defendant by the California courts consistent with traditional notions of fair play and substantial justice.

13.   The amount in controversy exceeds the jurisdictional minimum of this Court, and the total amount of damages sought exceeds $25,000.

14.   Venue is proper in this Court pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v. Defendant TrueCar's principal executive offices were located within this judicial district at the time of the IPO and the Secondary Offering, the individual defendants conduct business in this County, and many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this County.

## PARTIES

15.   Plaintiff Ning Shen purchased TrueCar securities pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO and has been damaged thereby.

16.   Plaintiff William Fitzpatrick purchased TrueCar securities pursuant and/or traceable to the Registration Statement issued in connection with the Company's Secondary Offering and has been damaged thereby.

313611.1

COMPLAINT
- 4 -

17.     Defendant TrueCar is a company incorporated under the laws of Delaware with its principal executive offices located at 120 Broadway, Suite 200, Santa Monica, California 90401.

18.     Defendant Scott Painter ("Painter") was, at all relevant times, TrueCar's Chief Executive Officer ("CEO") and a director of the Company. Defendant Painter signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

19.     Defendant Michael Guthrie ("Guthrie") was, at all relevant times, Chief Financial Officer ("CFO") of the Company.  Defendant Guthrie signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

20.     Defendant Abhishek Agrawal ("Agrawal") was, at all relevant times, a director of the Company. Defendant Agrawal signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

21.     Defendant Todd Bradley ("Bradley") was, at all relevant times, a director of the Company. Defendant Bradley signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

22.     Defendant Robert Buce ("Buce") was, at all relevant times, a director of the Company. Defendant Buce signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

23.     Defendant Christopher Claus ("Claus") was, at all relevant times, a director of the Company. Defendant Claus signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

24.     Defendant Steven Dietz ("Dietz") was, at all relevant times, a director of the Company. Defendant Dietz signed or authorized the signing of the Company's IPO Registration

313611.1

COMPLAINT
- 5 -

Statement and the Secondary Registration Statement filed with the SEC.

25. Defendant Thomas Gibson ("Gibson") was, at all relevant times, a director of the Company. Defendant Gibson signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

26. Defendant John Krafcik ("Krafcik") was, at all relevant times, President and a director of the Company. Defendant Krafcik signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

27. Defendant John Pierantoni ("Pierantoni") was, at all relevant times, Chief Accounting Officer of the Company. Defendant Pierantoni signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

28. Defendant Ion Yadigaroglu ("Yadigaroglu") was, at all relevant times, a director of the Company. Defendant Yadigaroglu signed or authorized the signing of the Company's IPO Registration Statement and the Secondary Registration Statement filed with the SEC.

29. The Defendants referenced above in ¶¶18-28 are referred to herein as the "Individual Defendants." The Individual Defendants each participated in the preparation of and signed the Registration Statements. Defendant TrueCar and the Individual Defendants who signed the Registration Statements are strictly liable for the materially false and misleading statements incorporated into the Registration Statements. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of TrueCar's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.

30. Defendant Goldman, Sachs & Co ("Goldman Sachs") was an underwriter for TrueCar's IPO and Secondary Offering. In the IPO, Goldman Sachs agreed to purchase 3,187,750

1    TrueCar shares exclusive of the over-allotment option.   In the Secondary Offering, Goldman

2    Sachs agreed to purchase 2,013,450 TrueCar shares exclusive of the over-allotment option.

3        31.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter for

4    TrueCar's IPO and Secondary Offering. In the IPO, J.P. Morgan agreed to purchase 2,876,750

5    TrueCar shares exclusive of the over-allotment option.   In the Secondary Offering, J.P. Morgan

6    agreed to purchase 2,165,090 TrueCar shares exclusive of the over-allotment option.

7

8        32.     Defendant RBC Capital Markets, LLC ("RBC") was an underwriter for TrueCar's

9    IPO and Secondary Offering. In the IPO, RBC agreed to purchase 933,000 TrueCar shares

10   exclusive of the over-allotment option.   In the Secondary Offering, RBC agreed to purchase

11   572,864 TrueCar shares exclusive of the over-allotment option.

12

13       33.     Defendant Cowen and Company, LLC ("Cowen") was an underwriter for

14   TrueCar's IPO and Secondary Offering. In the IPO, Cowen agreed to purchase 388,750 TrueCar

15   shares exclusive of the over-allotment option.   In the Secondary Offering, Cowen agreed to

16   purchase 286,432 TrueCar shares exclusive of the over-allotment option.

17       34.     Defendant JMP Securities LLC ("JMP") was an underwriter for TrueCar's IPO and

18   Secondary Offering. In the IPO, JMP agreed to purchase 388,750 TrueCar shares exclusive of the

19   over-allotment option.   In the Secondary Offering, JMP agreed to purchase 353,828 TrueCar

20   shares exclusive of the over-allotment option.

21

22       35.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for

23   TrueCar's Secondary Offering. In the Secondary Offering, Morgan Stanley agreed to purchase

24   1,010,937 TrueCar shares exclusive of the over-allotment option.

25       36.     The Defendants referenced above in ¶¶30-35 are hereinafter referred to as the

26   "Underwriter Defendants." The Underwriter Defendants caused the Registration Statements to be

27   filed with the SEC and declared effective in connection with offers and sales thereof, including to

28

313611.1

COMPLAINT
- 7 -

1 Plaintiffs and the Class.  Pursuant to the 1933 Act, the Underwriter Defendants are liable for the

2 materially false and misleading statements in the Registration Statements.

### CLASS ACTION ALLEGATIONS

3

4      37.      Plaintiffs bring this action as a class action pursuant to California Code of Civil

5 Procedure Section 382 on behalf of a Class, consisting of all persons and/or entities who

6

7 purchased or otherwise acquired the common stock of TrueCar pursuant and/or traceable to the

8 Company's false and/or misleading Registration Statements and Prospectuses issued in connection

9 with the Company's IPO and Secondary Offering, and who were damaged thereby (the "Class").

10 Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant

11 times, members of their immediate families and their legal representatives, heirs, successors, or

12

13 assigns, and any entity in which Defendants have or had a controlling interest.

14      38.      The members of the Class are so numerous that joinder of all members is

15 impracticable.  During the relevant period, TrueCar's securities were actively traded on the

16 NASDAQ.  While the exact number of Class members is unknown to Plaintiffs at this time and

17 can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or

18 thousands of members in the proposed Class.  Moreover, record owners and other members of the

19 Class may be identified from records maintained by TrueCar or its transfer agent and may be

20 notified of the pendency of this action by mail, using the form of notice similar to that customarily

21 used in securities class actions.

22

23      39.      Plaintiffs' claims are typical of the claims of the members of the Class as all

24 members of the Class are similarly affected by Defendants' wrongful conduct in violation of

25 federal law that is complained of herein.

26      40.      Plaintiffs will fairly and adequately protect the interests of the members of the

27 Class and have retained counsel competent and experienced in class and securities litigation.

28

Exhibit A
Page 14

41.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the Securities Act was violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public in connection with the Company's IPO and Secondary Offering omitted and/or misrepresented material facts about the business, operations, and prospects of TrueCar; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## BACKGROUND

43.    Defendant TrueCar operates a data driven platform that allows users to obtain market based pricing data on new and used cars and to connect with TrueCar's network of Certified Dealers.  TrueCar's platform operates on a common technology infrastructure, powered by proprietary data and analytics.  Users access TrueCar's platform through the TrueCar.com website and TrueCar mobile applications or through the car buying websites and mobile applications that TrueCar operates for its affinity group marketing partners.

44.    The Company purports to have extensively analyzed the data regarding the factors

Exhibit A
Page 15

driving consumers to use its website. For example, the IPO Registration Statement stated, in relevant part:

> **_Robust data and proprietary analytics platform_**
>
> Our digital platform is powered by data and proprietary analytics. Our data repository contains a wide variety of information, including vehicle-specific information on automotive transactions, vehicle registration records, consumer buying patterns and behavior, demographic information, and macroeconomic data. Our platform also enables our pay-for-performance business model by identifying sales for which a dealer generally pays us a fee only when a TrueCar user purchases a car or based on other performance-based metrics.

45.     On or about April 4, 2014, the Company filed the IPO Registration Statement with the SEC on Form S-1. Thereafter, the Company repeatedly amended the Form S-1, including on or about May 15, 2014, when the Company filed with the SEC the final Form S-1/A (collectively, the "IPO Registration Statement") for the IPO.

46.     On or around May 16, 2014, the Company filed with the SEC its IPO Prospectus (the "IPO Prospectus"), which forms part of the IPO Registration Statement that was declared effective on May 15, 2014.

47.     In the IPO, the Company and the underwriters sold 8,941,250 shares of common stock at a price of $9.00 per share, which included 1,166,250 shares sold pursuant to the exercise by the underwriters of the over-allotment option. According to the Company, the IPO raised approximately $69.2 million in net proceeds to the Company after deducting underwriters' discounts, commissions, and other IPO expenses.

48.     On or about October 28, 2014, the Company filed the Secondary Registration Statement with the SEC on Form S-1. Thereafter, the Company repeatedly amended the Form S-1, including on or about November 10, 2014, when the Company filed with the SEC the final Form S-1/A (collectively, the "Secondary Registration Statement") for the Secondary Offering.

49.     On or around November 12, 2014, the Company filed with the SEC its Prospectus for the Secondary Offering (the "Secondary Prospectus"), which forms part of the Secondary

1   Registration Statement that was declared effective on November 10, 2014.

2        50.    In the SPO, the Company, selling stockholders, and the underwriters sold

3   7,362,991 shares of common stock at a price of $17.00 per share, which included 1,960,390 shares

4   of common stock sold by the Company and 5,402,601 shares of common stock sold by selling

5   stockholders.   According to the Company, the SPO raised approximately $30.8 million in net

6   proceeds to the Company (approximately $125 million in gross proceeds for the Company and the

7   selling stockholders).

8

9                    **TRUECAR'S FALSE AND/OR MISLEADING STATEMENTS**

10                        **IPO Registration Statement And Prospectus**

11        51.    The IPO Registration Statement failed to disclose that the Company's business

12   practices violated unfair competition and deceptive trade practice laws because TrueCar acts as a

13   dealer and broker in car sales transactions without proper licensing, in violation of the laws of a

14   number of States.   Therefore, the IPO Registration Statement was negligently prepared and, as a

15   result, contained untrue statements of material facts or omitted to state other facts necessary to

16   make the statements made not misleading, and was not prepared in accordance with the rules and

17   regulations governing their preparation.

18

19        52.    With respect to laws and regulations, the IPO Registration Statement stated, in

20   relevant part:

21
22        *We are subject to a complex framework of federal and state laws and regulations*
         *primarily concerning vehicle sales, advertising and brokering, many of which are*
23        *unsettled, still developing and contradictory, which have in the past, and could in*
         *the future, subject us to claims, challenge our business model or otherwise harm*
24        *our business.*

25        Various aspects of our business are or may be subject, directly or indirectly, to U.S.
         federal and state laws and regulations. Failure to comply with such laws or
26        regulations may result in the suspension or termination of our ability to do business
         in affected jurisdictions or the imposition of significant civil and criminal penalties,
27        including fines or the award of significant damages against us and our TrueCar
         Certified Dealers in class action or other civil litigation.

28

313611.1

COMPLAINT
- 11 -

**Exhibit A**
**Page 17**

*State Motor Vehicle Sales, Advertising and Brokering Laws*

The advertising and sale of new or used motor vehicles is highly regulated by the states in which we do business. Although we do not sell motor vehicles, state regulatory authorities or third parties could take the position that some of the regulations applicable to dealers or to the manner in which motor vehicles are advertised and sold generally are directly applicable to our business. If our products and services are determined to not comply with relevant regulatory requirements, we or our TrueCar Certified Dealers could be subject to significant civil and criminal penalties, including fines, or the award of significant damages in class action or other civil litigation as well as orders interfering with our ability to continue providing our products and services in certain states. In addition, even absent such a determination, to the extent dealers are uncertain about the applicability of such laws and regulations to our business, we may lose, or have difficulty increasing the number of, TrueCar Certified Dealers in our network, which would affect our future growth.

Several states in which we do business have laws and regulations that strictly regulate the brokering of motor vehicles or the making of so-called "bird-dog" payments by dealers to third parties in connection with the sale of motor vehicles through persons other than licensed salespersons. If our products or services are determined to fall within the scope of such laws or regulations, we may be forced to implement new measures, which could be costly, to reduce our exposure to those obligations, including the discontinuation of certain products or services in affected jurisdictions. Additionally, such a determination could subject us or our TrueCar Certified Dealers to significant civil or criminal penalties, including fines, or the award of significant damages in class action or other civil litigation.

In addition to generally applicable consumer protection laws, many states in which we do business have laws and regulations that specifically regulate the advertising for sale of new or used motor vehicles. These state advertising laws and regulations are frequently subject to multiple interpretations and are not uniform from state to state, sometimes imposing inconsistent requirements on the advertiser of a new or used motor vehicle. If the content displayed on the websites we operate is determined or alleged to be inaccurate or misleading, under motor vehicle advertising laws, generally applicable consumer protection laws, or otherwise, we could be subject to significant civil and criminal penalties, including fines, or the award of significant damages in class action or other civil litigation. Moreover, such allegations, even if unfounded or decided in our favor, could be extremely costly to defend, could require us to pay significant sums in settlements, and could interfere with our ability to continue providing our products and services in certain states.

From time to time, certain state authorities and dealer associations have taken the position that aspects of our products and services violate state brokering, bird-dog, or advertising laws. When such allegations have arisen, we have endeavored to resolve the identified concerns on a consensual and expeditious basis, through negotiation and education efforts, without resorting to the judicial process. In certain instances, we have nevertheless been obligated to suspend all or certain aspects of our business operations in a state pending the resolution of such issues, the resolution of which included the payment of fines in 2011 and 2012 in the aggregate amount of approximately $26,000. For example, in the beginning of 2012, following implementation of our first nationwide television advertising campaign, state regulatory inquiries with respect to the compliance of our products

Exhibit A
Page 18

and services with state brokering, bird-dog, and advertising laws intensified to a degree not previously experienced by us. Responding to and resolving these inquiries, as well as our efforts to ameliorate the related adverse publicity and loss of TrueCar Certified Dealers from our network, resulted in decreased revenues and increased expenses and, accordingly, increased our losses during much of 2012.

In October 2013, we received an Investigative Demand from the Oregon Attorney General (the "Oregon Inquiry") requesting information regarding potential noncompliance with the Oregon Unlawful Trade Practices Act. We are cooperating with the Oregon Department of Justice in an effort to reach consensual resolution of the issues raised by the Oregon Inquiry without making material, unfavorable adjustments to our business practices or user experience in Oregon. We cannot assure you that these efforts will be successful.

More recently, in May 2014, we received a letter from the Consumer Protection Division of the Mississippi Attorney General's Office (the "Mississippi Inquiry") suggesting that we may be acting unlawfully as an auto broker in Mississippi. We intend to cooperate with the Mississippi Attorney General's office in an effort to reach consensual resolution of the issues raised by the Mississippi Inquiry without making material unfavorable adjustments to our business practices or user experience in Mississippi. We cannot assure you that these efforts will be successful.

If state regulators or other third parties take the position in the future that our products or services violate applicable brokering, bird-dog, or advertising laws or regulations, responding to such allegations could be costly, could require us to pay significant sums in settlements, could require us to pay civil and criminal penalties, including fines, could interfere with our ability to continue providing our products and services in certain states, or could require us to make adjustments to our products and services or the manner in which we derive revenue from our participating dealers, any or all of which could result in substantial adverse publicity, loss of TrueCar Certified Dealers from our network, decreased revenues, increased expenses, and decreased profitability.

### Federal Advertising Regulations

The Federal Trade Commission, or the FTC, has authority to take actions to remedy or prevent advertising practices that it considers to be unfair or deceptive and that affect commerce in the United States. If the FTC takes the position in the future that any aspect of our business constitutes an unfair or deceptive advertising practice, responding to such allegations could require us to pay significant damages, settlements, and civil penalties, or could require us to make adjustments to our products and services, any or all of which could result in substantial adverse publicity, loss of participating dealers, lost revenues, increased expenses, and decreased profitability.

### Federal Antitrust Laws

The antitrust laws prohibit, among other things, any joint conduct among competitors that would lessen competition in the marketplace. Some of the information that we obtain from dealers is competitively sensitive and, if disclosed inappropriately, could potentially be used by dealers to impede competition or otherwise diminish independent pricing activity. A governmental or private civil action alleging the improper exchange of information, or unlawful participation in price maintenance or other unlawful or anticompetitive activity, even if unfounded,

Exhibit A
Page 19

could be costly to defend and adversely impact our ability to maintain and grow our dealer network. For example, we have been informed that the FTC's Bureau of Competition is conducting an investigation to determine whether firms in the retail automotive industry may have violated Section 5 of the Federal Trade Commission Act by agreeing to refuse to deal with us. We have received a Civil Investigative Demand dated February 11, 2014 requesting that we produce certain documents and information to the FTC related to the matters under investigation by it. We are cooperating with the FTC in an effort to supply the information required by the request without unduly burdening our resources. We cannot assure you that these efforts will be successful.

In addition, governmental or private civil actions related to the antitrust laws could result in orders suspending or terminating our ability to do business or otherwise altering or limiting certain of our business practices, including the manner in which we handle or disclose dealer pricing information, or the imposition of significant civil or criminal penalties, including fines or the award of significant damages against us and our TrueCar Certified Dealers in class action or other civil litigation.

53.     The above statements and purported risk warnings were materially false and misleading because they failed to disclose and misrepresented the following adverse facts that existed at the time of the IPO, the Company's business practices violated unfair competition and deceptive trade practice laws because TrueCar acts as a dealer and broker in car sales transactions without proper licensing, in violation of the laws of a number of States.

54.     As was later revealed in a complaint filed in the Southern District of New York ("SDNY Complaint") seeking over $250 million dollars in damages, the truth was that TrueCar's business practices violated unfair competition and deceptive trade practice laws as early as 2012. Specifically, the SDNY Complaint alleges, in part, that:

TrueCar's advertisements falsely claim that consumers using its services can purchase an automobile with no "haggling" and "no negotiation," and that TrueCar benefits consumers by "removing surprises at the dealership." However, TrueCar merely acts as a referral service that provides TrueCar-affiliated automobile dealerships with customer leads and contact information. Contrary to TrueCar's advertising claims, the consumer must negotiate, or "haggle," with TrueCar's affiliated dealers to complete the actual purchase. TrueCar's false advertising unlawfully diverts consumers away from Plaintiffs' automobile dealerships, which results in lost sales and harm to Plaintiffs' goodwill.

TrueCar's literally false or misleading advertisements deceive consumers into believing that they can purchase an automobile without price negotiations at a "guaranteed" low price by simply logging onto TrueCar's website and printing or downloading a price certificate. In reality, consumers using TrueCar's services must negotiate with the TrueCar-affiliated dealers over price, features, and financing, just as they would need to do with any other non-affiliated dealer. Despite its advertising claims to the contrary, TrueCar does not "remove surprises"

Exhibit A
Page 20

at the dealership. Instead, TrueCar's customers will be surprised to learn that, among other discrepancies, the promised vehicle may not be in stock, and may not be available at the advertised price or financing terms. TrueCar's false or misleading advertising includes: (a) false "no-haggle" claims; (b) bait-and-switch advertising; (c) false factory invoice claims; (d) false financing claims; (e) false transparency claims; and (f) false rebate claims.

TrueCar's advertising is causing serious and irreparable harm to Plaintiffs. It constitutes false advertising in violation of Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. §1125(a)(1)(B)); unfair competition in violation of New York common law; and violation of the New York Deceptive Acts and Practices Act (N.Y. Gen. Bus. Law §§ 349-350) and violation of the comparable unfair competition and deceptive acts and practices laws of the other states in which the advertising is disseminated.

If TrueCar's advertising is not immediately enjoined, Plaintiffs will continue to suffer irreparable harm in the marketplace. Plaintiffs have lost sales and have suffered injury to their goodwill and business reputation as a result of TrueCar's false advertising claims.

* * *

TrueCar's advertising and business practices have been investigated in multiple states. For example, regulators in Virginia determined that TrueCar's affiliated dealers were violating state law by paying fees to TrueCar for leads that turned into sales. Similarly, TrueCar temporarily suspended its operations in Nebraska, Oklahoma, and Colorado *in 2012 due to regulatory concerns relating to its advertising and business practices*.

(Emphasis added.)

55.    A lawsuit filed against TrueCar in Los Angeles County Superior Court makes similar revelations, disclosing that:

This action arises from TrueCar, Inc.'s noncompliance with various sections of the California Vehicle Code ("CVC") pertaining to dealer licensing, brokering, advertising, and disclosure. Through its failure to obtain the necessary dealer's license and autobroker's endorsement, which are required in light of the manner in which TrueCar, Inc. ("TrueCar") conducts business, TrueCar avoids compliance with a host of CVC sections regulating licensed dealers and autobrokers. Accordingly, TrueCar's methods of doing business: (a) undermine the purpose of the CVC, to wit, consumer protection; (b) effectively allow TrueCar to function as a dealer and autobroker without complying with CVC regulations pertaining to dealers and autobrokers; and (c) place CNCDA members who are licensed dealers doing business or attempting to do business in a situation of potentially unwittingly not complying with the law.

56.    Under applicable SEC rules and regulations, the IPO Registration Statement was required to disclose known trends, events, or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations. *See* Item 303 of SEC Reg. S-

K, 17 C.F.R. §229.303.  The IPO Registration Statement violated these regulations by failing to disclose that the Company was violating consumer protection laws.

57.     The IPO Registration Statement failed to disclose that the Company's growth was based on unsustainable levels of sales and marketing expenditures.  TrueCar continuously touted its future growth while failing to disclose that its business model was flawed and that its projected growth was premised on unsustainably high customer acquisition costs.

58.     For example, the IPO Registration Statement made the following representations concerning the Company's growth strategy:

*Expand the number of visitors to our platform*

> We intend to grow TrueCar.com website traffic by building our brand through marketing campaigns that emphasize the value of trust and transparency in the car-buying process and the benefits of transacting with TrueCar Certified Dealers. We intend to grow affinity group marketing partner traffic by promoting creative marketing programs, such as subsidizing interest rates on loans, and providing other incentives from third parties that deliver a tangible economic benefit to transacting members, increasing awareness of the car-buying program among the members of our affinity group marketing partners and adding new affinity group marketing partners that bring additional users to our platform.

59.     The IPO Registration Statement also contained the following positive representations concerning the increase in the Company's average monthly unique visitors, attributing the growth to the increase in advertising campaigns.

> The number of average monthly unique visitors increased 67.6% to approximately 2.8 million in the year ended December 31, 2013 from approximately 1.7 million in the year ended December 31, 2012. The number of average monthly unique visitors increased 80.2% to approximately 3.9 million in the three months ended March 31, 2014 from approximately 2.2 million in the three months ended March 31, 2013. We attribute the growth in our average monthly unique visitors principally to increased television and digital marketing advertising campaigns that have led to increased brand awareness, as well as increased traffic from our affinity group marketing partners.

60.     The above statements were materially false and misleading because they failed to disclose that the Company's growth was based on unsustainable and, in effect, unprofitable levels of sales and marketing expenses.  In addition, Defendants' failure to disclose this fact was a violation of 303 SEC Reg. S-K, 17 C.F.R. §229.303.

61.     These undisclosed facts were particularly material because, at the time of the IPO, investors in Truecar understood that, notwithstanding the Company's outstanding growth, the Company would need to seriously bring down its marketing costs in order for the Company to become reasonably profitable.  For example, on August 7, 2014, shortly after the IPO, TrueCar published a presentation for investors.[1]  The presentation indicated that in the second quarter of 2014, the Company spent 57% of its revenue on sales and market, a figure that would have to decline to 32-35% if the Company was going to achieve its long term profitability goal:

## LONG-TERM FINANCIAL OBJECTIVES
NON-GAAP

|  | Q2 2014 | Long-term Objectives |
| --- | --- | --- |
| Gross margin | 92% | 92 - 95% |
| Technology & development | 15% | 10 - 12% |
| Sales & marketing | 57% | 32 - 35% |
| General & administrative | 18% | 9 - 11% |
| Adjusted EBITDA margin | 3% | 35%+ |

(1)  See the attached Appendix and the Statement of Operations tab of the Q2 historical metrics file uploaded to http://ir.true.com for reconciliations to GAAP expenses.

16                                                                                                        TRUECar.

**Secondary Registration Statement And Prospectus**

62.     The Secondary Registration Statement was false and misleading because it also failed to disclose that the Company's business practices violated unfair competition and deceptive trade practice laws.

63.     For example, with respect to law and regulations, the Secondary Registration

---

[1]     While these contemporaneous statements are not part of the IPO Registration Statement per se, they demonstrate the materiality of facts that the IPO Registration Statement failed to disclose, namely, that TrueCar's high growth rates were not achievable unless the Company spent unsustainably large amounts of money on marketing .

313611.1                                         COMPLAINT
                                                      - 17 -

Exhibit A
Page 23

Statement stated, in relevant part:

> *We are subject to a complex framework of federal and state laws and regulations primarily concerning vehicle sales, advertising and brokering, many of which are unsettled, still developing and contradictory, which have in the past, and could in the future, subject us to claims, challenge our business model or otherwise harm our business.*
>
> Various aspects of our business are or may be subject, directly or indirectly, to U.S. federal and state laws and regulations. Failure to comply with such laws or regulations may result in the suspension or termination of our ability to do business in affected jurisdictions or the imposition of significant civil and criminal penalties, including fines or the award of significant damages against us and our TrueCar Certified Dealers in class action or other civil litigation.
>
> *State Motor Vehicle Sales, Advertising and Brokering Laws*
>
> The advertising and sale of new or used motor vehicles is highly regulated by the states in which we do business. Although we do not sell motor vehicles, state regulatory authorities or third parties could take the position that some of the regulations applicable to dealers or to the manner in which motor vehicles are advertised and sold generally are directly applicable to our business. If our products and services are determined to not comply with relevant regulatory requirements, we or our TrueCar Certified Dealers could be subject to significant civil and criminal penalties, including fines, or the award of significant damages in class action or other civil litigation as well as orders interfering with our ability to continue providing our products and services in certain states. In addition, even absent such a determination, to the extent dealers are uncertain about the applicability of such laws and regulations to our business, we may lose, or have difficulty increasing the number of, TrueCar Certified Dealers in our network, which would affect our future growth.
>
> Several states in which we do business have laws and regulations that strictly regulate or prohibit the brokering of motor vehicles or the making of so-called "bird-dog" payments by dealers to third parties in connection with the sale of motor vehicles through persons other than licensed salespersons. If our products or services are determined to fall within the scope of such laws or regulations, we may be forced to implement new measures, which could be costly, to reduce our exposure to those obligations, including the discontinuation of certain products or services in affected jurisdictions. Additionally, such a determination could subject us or our TrueCar Certified Dealers to significant civil or criminal penalties, including fines, or the award of significant damages in class action or other civil litigation.
>
> In addition to generally applicable consumer protection laws, many states in which we do business have laws and regulations that specifically regulate the advertising for sale of new or used motor vehicles. These state advertising laws and regulations are frequently subject to multiple interpretations and are not uniform from state to state, sometimes imposing inconsistent requirements on the advertiser of a new or used motor vehicle. If the content displayed on the websites we operate is determined or alleged to be inaccurate or misleading, under motor vehicle advertising laws, generally applicable consumer protection laws, or otherwise, we could be subject to significant civil and criminal penalties, including fines, or the award of significant damages in class action or other civil litigation. Moreover, such allegations, even if unfounded or decided in our favor, could be extremely

313611.1

COMPLAINT

- 18 -

Exhibit A
Page 24

costly to defend, could require us to pay significant sums in settlements, and could interfere with our ability to continue providing our products and services in certain states.

From time to time, certain state authorities and dealer associations have taken the position that aspects of our products and services violate state brokering, bird-dog, or advertising laws. When such allegations have arisen, we have endeavored to resolve the identified concerns on a consensual and expeditious basis, through negotiation and education efforts, without resorting to the judicial process. In certain instances, we have nevertheless been obligated to suspend all or certain aspects of our business operations in a state pending the resolution of such issues, the resolution of which included the payment of fines in 2011 and 2012 in the aggregate amount of approximately $26,000. For example, in the beginning of 2012, following implementation of our first nationwide television advertising campaign, state regulatory inquiries with respect to the compliance of our products and services with state brokering, bird-dog, and advertising laws intensified to a degree not previously experienced by us. Responding to and resolving these inquiries, as well as our efforts to ameliorate the related adverse publicity and loss of TrueCar Certified Dealers from our network, resulted in decreased revenues and increased expenses and, accordingly, increased our losses during much of 2012.

In October 2013, we received an Investigative Demand from the Oregon Attorney General (the "Oregon Inquiry") requesting information regarding potential noncompliance with the Oregon Unlawful Trade Practices Act. We are cooperating with the Oregon Department of Justice in an effort to reach consensual resolution of the issues raised by the Oregon Inquiry without making material, unfavorable adjustments to our business practices or user experience in Oregon. We cannot assure you that these efforts will be successful.

More recently, in May 2014, we received a letter from the Consumer Protection Division of the Mississippi Attorney General's Office (the "Mississippi Inquiry") suggesting that we may be acting unlawfully as an auto broker in Mississippi. We intend to cooperate with the Mississippi Attorney General's office in an effort to reach consensual resolution of the issues raised by the Mississippi Inquiry without making material unfavorable adjustments to our business practices or user experience in Mississippi. We cannot assure you that these efforts will be successful.

If state regulators or other third parties take the position in the future that our products or services violate applicable brokering, bird-dog, or advertising laws or regulations, responding to such allegations could be costly, could require us to pay significant sums in settlements, could require us to pay civil and criminal penalties, including fines, could interfere with our ability to continue providing our products and services in certain states, or could require us to make adjustments to our products and services or the manner in which we derive revenue from our participating dealers, any or all of which could result in substantial adverse publicity, loss of TrueCar Certified Dealers from our network, decreased revenues, increased expenses, and decreased profitability.

*Federal Advertising Regulations*

The Federal Trade Commission, or the FTC, has authority to take actions to remedy or prevent advertising practices that it considers to be unfair or deceptive and that affect commerce in the United States. If the FTC takes the position in the future that any aspect of our business constitutes an unfair or deceptive advertising

practice, responding to such allegations could require us to pay significant damages, settlements, and civil penalties, or could require us to make adjustments to our products and services, any or all of which could result in substantial adverse publicity, loss of participating dealers, lost revenues, increased expenses, and decreased profitability. ·

*Federal Antitrust Laws*

The antitrust laws prohibit, among other things, any joint conduct among competitors that would lessen competition in the marketplace. Some of the information that we obtain from dealers is competitively sensitive and, if disclosed inappropriately, could potentially be used by dealers to impede competition or otherwise diminish independent pricing activity. A governmental or private civil action alleging the improper exchange of information, or unlawful participation in price maintenance or other unlawful or anticompetitive activity, even if unfounded, could be costly to defend and adversely impact our ability to maintain and grow our dealer network. For example, we have been informed that the FTC's Bureau of Competition is conducting an investigation to determine whether firms in the retail automotive industry may have violated Section 5 of the Federal Trade Commission Act by agreeing to refuse to deal with us. We have received a Civil Investigative Demand dated February 11, 2014 requesting that we produce certain documents and information to the FTC related to the matters under investigation by it. We are cooperating with the FTC in an effort to supply the information required by the request without unduly burdening our resources. We cannot assure you that these efforts will be successful.

In addition, governmental or private civil actions related to the antitrust laws could result in orders suspending or terminating our ability to do business or otherwise altering or limiting certain of our business practices, including the manner in which we handle or disclose dealer pricing information, or the imposition of significant civil or criminal penalties, including fines or the award of significant damages against us and our TrueCar Certified Dealers in class action or other civil litigation.

*Other*

The foregoing description of laws and regulations to which we are or may be subject is not exhaustive, and the regulatory framework governing our operations is subject to continuous change. The enactment of new laws and regulations or the interpretation of existing laws and regulations in an unfavorable way may affect the operation of our business, directly or indirectly, which could result in substantial regulatory compliance costs, civil or criminal penalties, including fines, adverse publicity, loss of participating dealers, lost revenues, increased expenses, and decreased profitability. Further, investigations by government agencies, including the FTC, into allegedly anticompetitive, unfair, deceptive or other business practices by us or our TrueCar Certified Dealers, could cause us to incur additional expenses and, if adversely concluded, could result in substantial civil or criminal penalties and significant legal liability.

64.     The above statements and purported risk warnings were materially false and misleading because they failed to disclose that, as described above, the Company's business practices violated unfair competition and deceptive trade practice laws because TrueCar acts as a

313611.1

COMPLAINT
- 20 -

Exhibit A
Page 26

1     dealer and broker in car sales transactions without proper licensing, in violation of the laws of a

2     number of States.

3          65.     In addition, as described above, the Secondary Registration Statement failed to

4

5     disclose that the Company's growth was tied to unsustainable levels of sales and marketing

6     expenditures. TrueCar continuously touted its future growth while failing to disclose that its

7     business model was flawed and that its projected growth was premised on unsustainable high

8     customer acquisition costs. TrueCar allocates a large percentage of total revenue to the affinity

9     partner that referred the customer, coupled with a high direct-to-consumer advertising expenses.

10          66.     For example, the Secondary Registration Statement made the following

11     representations concerning the Company's growth strategy:

12        ***Expand the number of visitors to our platform***

13

14        We intend to grow TrueCar.com website traffic by building our brand through marketing campaigns that emphasize the value of trust and transparency in the car-buying process and the benefits of transacting with TrueCar Certified Dealers. We

15        intend to grow affinity group marketing partner traffic by promoting creative marketing programs, such as subsidizing interest rates on loans, and providing

16        other incentives from third parties that deliver a tangible economic benefit to transacting members, increasing awareness of the car-buying program among the

17        members of our affinity group marketing partners and adding new affinity group marketing partners that bring additional users to our platform.

18

19          67.     The Secondary Registration Statement also contained the following positive

20     representation concerning the increase in the Company's average monthly unique visitors,

21     attributing the growth to the increase in advertising campaigns:

22        The number of average monthly unique visitors increased 67.6% to approximately 2.8 million in the year ended December 31, 2013 from approximately 1.7 million in

23        the year ended December 31, 2012. The number of average monthly unique visitors increased 75.6% to approximately 4.1 million in the six months ended June 30,

24        2014 from approximately 2.3 million in the six months ended June 30, 2013. We attribute the growth in our average monthly unique visitors principally to increased

25        television and digital marketing advertising campaigns that have led to increased brand awareness, as well as increased traffic from our affinity group marketing

26        partners.

27          68.     The foregoing statements were false and misleading in light of the failure to

28     disclose that TrueCar's growth was based on unsustainable levels of marketing expenditures. In

1 addition, the failure to disclose these facts constituted a violation of 303 SEC Reg. S-K, 17 C.F.R.

2 §229.303.

3 **THE TRUTH BEGINS TO EMERGE**

4 69. On February 19, 2015, the Company issued a press release entitled "TrueCar Reports

5 Record Fourth Quarter and Full Year 2014 Financial Results." TrueCar reported break-even

6 earnings for the fourth quarter. The Company reported revenues of $55.5 million for the fourth

7 quarter, a 38.2% increase from the year-ago quarter, in line with analysts' estimates for the

8 quarter. However, the Company suffered a sequential decline in both unique visitors and units

9 sold in the fourth quarter. The trend for TrueCar's unique visitors and units sold has been strong

10 since 2012, and the sequential decline in both metrics raised a red flag regarding the Company's

11 growth. Below is a slide from the Company's Fourth Quarter and Full Year 2014 Earnings Call

12 Presentation illustrating the drop in TrueCar's average monthly unique visitors.

13

14

15 

16

17

18

19

20

21

22

23 70. On this news, shares of TrueCar fell $2.82, approximately 13.6%, from $20.77 on

24 February 19, 2015 to $17.95 on February 20, 2015, after the Company reported its fourth quarter

25 results.

26 71. On March 9, 2015, a complaint was filed in federal court against TrueCar claiming

27 that car dealers have been injured by the Company's business practices which violated unfair

28

313611.1

COMPLAINT
- 22 -

competition and deceptive trade practice laws.

72.     On this news, shares of TrueCar fell $0.47, over 2.7%, to close at $16.50 on March 10, 2015.

73.     On May 7, 2015, the Company issued a press release entitled, "TrueCar Reports Record First Quarter 2015 Financial Results."  TrueCar reported a loss of $11.6 million in its first quarter, and on a per-share basis, the Company said it had a loss of 14 cents.  In addition, total units was 168,559, short of its guidance of 170,000 units, largely attributed to lower than expected units from the USAA affinity channel.

74.     On this news, shares of TrueCar fell %0.92, or 6.1%, from $15.03 on May 7, 2015 to $14.11 on May 8, 2015.

75.     On May 20, 2015, a lawsuit was filed against TrueCar in Los Angeles County Superior Court, claiming that TrueCar violates various laws that govern car sales in the state including allegations that TrueCar acts as a dealer and broker in car sales transactions without proper licensing.

76.     On this news, shares of TrueCar fell $1.04, or over 6.9%, to close at $13.99 on May 20, 2015.

77.     On July 23, 2015, the Company issued a press release entitled "TrueCar Announces Preliminary Results and Adjusted Guidance; Announces Call to Discuss Today at 6:30 p.m. Eastern Time."  TrueCar announced that it was *drastically reducing 2015 full year guidance to a range of $252 million to $258 million, from the previously announced range of $280 million to $290 million,* as fewer consumers used the site to make purchases.  TrueCar also announced that it expected second-quarter revenue to be in the range of $65 million to $65.3 million, with a loss expected in the range of $15 million to $15.5 million.  Analysts polled by Thomson Reuters had seen revenue of $68 million and a profit of $2.2 million.  TrueCar has lowered its 2015 revenue

313611.1

guidance by 12% and effectively lowered its EBITDA guidance for 2015 by 85%. TrueCar said the reduced outlook was primarily attributable to a shortfall in the number of consumers who visited its shopping site to buy cars. The Company only spent $17.7 million on marketing compared to the $20 million it had expected to spend as it failed to see return value in higher-priced advertising. Thus, when the Company finally attempted to "throttle back" on its marketing expenses and move towards its long-term objectives, the Company experienced a serious decline in revenue.

78.      Additionally, following the negative preannouncement, TrueCar was downgraded by a number of firms. RBC Capital downgraded the rating on TrueCar, from Outperform to Sector Perform, while lowering the price target to $9 from $23. RBC Capital analyst Mark Mahaney stated, "[g]iven the material reduction in guidance, we now lack conviction in the company's growth outlook, the unit economics of its TRUE-branded channel, and its ability to grow non-USAA affinity channels." Goldman Sachs downgraded TrueCar to "neutral" and lowered its price target for the shares to $8 from $17. Similarly, Cowen & Co. slashed its price target to $8 from $14. Goldman Sachs analyst Debra Schwartz noted that "[u]nit volume was significantly weaker than expected and with AutoNation dealers recently exiting the platform and risk of additional losses stemming from outstanding litigation."

79.      On this news, shares of TrueCar fell $3.81, over 35%, from $10.68 on July 23, 2015 to $6.87 on July 24, 2015 after the Company's negative preannouncement.

80.      The price of TrueCar common stock declined significantly, thereby damaging investors. The Company's share price has fallen approximately 33% from its IPO Offering Price of $9.00, and nearly 65% from its Secondary Offering Price of $17.00. As of the date of this complaint, the stock is trading at approximately $5.98, a market capitalization decline of $900 million from the Company's Secondary Offering Price.

313611.1

COMPLAINT
- 24 -

## FIRST CLAIM
### Violation of Section 11 of the Securities Act
### (Against All Defendants)

79.     Plaintiffs repeat and reallege each and every allegation contained above, except any allegation of fraud, recklessness or intentional misconduct.

80.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

81.     The Registration Statements for the IPO and the Secondary Offering were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

82.     TrueCar is the registrant for the IPO and the Secondary Offering.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statements.

83.     As issuer of the shares, TrueCar is strictly liable to Plaintiffs and the Class for the misstatements and omissions.

84.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were true and without omissions of any material facts and were not misleading.

85.     By reasons of the conduct herein alleged, each Defendant violated; and/or controlled a person who violated Section 11 of the Securities Act.

86.     Plaintiffs acquired TrueCar shares pursuant and/or traceable to the Registration Statements for the IPO and/or the Secondary Offering.

87.     Plaintiffs and the Class have sustained damages.  The value of TrueCar common stock has declined substantially subsequent to and due to Defendants' violations.

313611.1

## SECOND CLAIM
### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

88.     Plaintiffs repeat and reallege each and every allegation contained above, except any allegation of fraud, recklessness or intentional misconduct.

89.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

90.     Individual Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of TrueCar within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause TrueCar to engage in the acts described herein.

91.     Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiffs and the Class.

92.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiffs and the Class for damages suffered.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Federal Rule of Civil Procedure 23(a).

(b)     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

313611.1

COMPLAINT
- 26 -

Exhibit A
Page 32

1    (d)    Awarding rescission or a rescissory measure of damages; and

2    (e)    Such other and further relief as the Court may deem just and proper.

3                    **JURY TRIAL DEMANDED**

4    Plaintiffs hereby demand a trial by jury.

5

6    Dated: August 11, 2015                  **GLANCY PRONGAY & MURRAY LLP**

7

8                                   By: _____

9                                   Lionel Z. Glancy
                                      Robert V. Prongay

10                             Casey E. Sadler
                             Elaine Chang

11                             1925 Century Park East, Suite 2100
                             Los Angeles, California 90067

12                             Telephone: (310) 201-9150
                             Facsimile: (310) 201-9160

13                             Email:    rprongay@glancylaw.com
                                        echang@glancylaw.com

14

15                             John Jasnoch
                             Scott+Scott, Attorneys at Law, LLP

16                             707 Broadway, Suite 1000
                             San Diego, CA 92101

17                             Telephone:   (619) 233-4565
                             Facsimile:   (619) 233-0508

18                             jjasnoch@scott-scott.com

19

20                             Joseph Guglielmo
                             Joseph Halloran (CA BAR NO. 288617)

21                             Scott+Scott, Attorneys at Law, LLP
                             The Chrysler Building

22                             405 Lexington Avenue, 40th Floor
                             New York, NY  10174

23                             Telephone:   (212) 223-6444
                             Facsimile:   (212) 223-6334

24                             jguglielmo@scott-scott.com
                             jhalloran@scott-scott.com

25

26                             *Attorneys for Plaintiffs Ning Shen and William Fitzpatrick*

27

28

313611.1                               COMPLAINT
                                   - 27 -

**Exhibit A**
**Page 33**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Elaine Chang (SBN 293937)
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
TELEPHONE NO.: 310-201-9150   FAX NO.: 310-201-9160
ATTORNEY FOR (Name): Plaintiffs NING SHEN AND WILLIAM FITZPATRICK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

**FILED**
Superior Court ~~California~~
~~County of L~~

AUG 11 2015

Shen ~~~~ ~~~ive Officer/Clerk
By _____ Deputy
Shaunya Bolden

CASE NAME:
Shen, et al. v. Truecar, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 5 9 0 9 9 9 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [✓] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [✓] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): 2 – Violations of Sections 11 & 15 of the Securities Act
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 11, 2015

Elaine Chang
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**Exhibit A**
**Page 34**

 

**CM-010**

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
 Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
 Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
   Wrongful Death
 Product Liability *(not asbestos or
  toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice–
   Physicians & Surgeons
  Other Professional Health Care
   Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip
   and fall)
  Intentional Bodily Injury/PD/WD
   (e.g., assault, vandalism)
  Intentional Infliction of
   Emotional Distress
  Negligent Infliction of
   Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business
  Practice (07)
 Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
 Defamation (e.g., slander, libel)
  (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
   *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)
**Employment**
 Wrongful Termination (36)
 Other Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease
   Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
   Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
   Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
   Case
 Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
 Eminent Domain/Inverse
  Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
   domain, landlord/tenant, or
   foreclosure)*
**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
   Case Matter
  Writ–Other Limited Court Case
   Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
   Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of
   County)
  Confession of Judgment *(non-
   domestic relations)*
  Sister State Judgment
  Administrative Agency Award
   *(not unpaid taxes)*
  Petition/Certification of Entry of
   Judgment on Unpaid Taxes
  Other Enforcement of Judgment
   Case
**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
   harassment)*
  Mechanics Lien
  Other Commercial Complaint
   Case *(non-tort/non-complex)*
  Other Civil Complaint
   *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
 Partnership and Corporate
  Governance (21)
 Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
   Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
   Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]                              **CIVIL CASE COVER SHEET**                                              Page 2 of 2

**Exhibit A
Page 35**

| SHORT TITLE: Ning Shen, et al. v. Truecar, Inc., et al. | CASE NUMBER CC 5 9 0 9 9 9 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 14   ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

| LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | Local Rule 2.0<br>Page 1 of 4 |
|---|---|---|

**Exhibit A**
**Page 36**

| SHORT TITLE: Ning Shen, et al. v. Truecar, Inc., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**Exhibit A**
**Page 37**

| SHORT TITLE:<br>Ning Shen, et al. v. Truecar, Inc., et al. | | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☑ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)    **CIVIL CASE COVER SHEET ADDENDUM**    Local Rule 2.0<br>LASC Approved 03-04    **AND STATEMENT OF LOCATION**    Page 3 of 4

**Exhibit A<br>Page 38**

| SHORT TITLE: Ning Shen, et al. v. Truecar, Inc., et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. <br><br> ☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 120 Broadway, Suite 200 |
|---|---|
| CITY: Santa Monica | STATE: CA    ZIP CODE: 90401 |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: August 11. 2015

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

Exhibit A
Page 39